UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL NORMILE,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          No. 3:20-CV-346-DCP
                                          )
KILOLO KIJAKAZI,[1]                       )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 21].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 19], Plaintiff's Motion for Extension of Time

[Doc. 18], and Defendant's Motion for Summary Judgment [Doc. 22].  Michael Normile

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"),

the final decision of Defendant Kilolo Kijakazi ("the Commissioner").  For the reasons that follow,

the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 19**], **DENY as MOOT**

Plaintiff's Motion for Extension of Time [**Doc. 18**], and **GRANT** the Commissioner's Motion for

Summary Judgment [**Doc. 22**].

## I.      PROCEDURAL HISTORY

On March 20, 2018, Plaintiff filed an application for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

began on December 3, 2015 [Tr. 290, 306, 378–79].[2] Prior to the administrative hearing, Plaintiff

amended his alleged onset date to February 1, 2018 [Tr. 24, 457]. After his application was denied

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 320–21]. A

hearing was held on June 5, 2019 [Tr. 72–97]. On July 11, 2019, the ALJ found that Plaintiff was

not disabled [Tr. 20–41]. The Appeals Council denied Plaintiff's request for review on June 16,

2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court

on August 7, 2020, seeking judicial review of the Commissioner's final decision under Section

405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions,

and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since February 1, 2018, the *amended* alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: diabetes mellitus, migraines versus chronic cluster headaches, and lumbar spinal stenosis with right lower extremity radiculopathy and pain (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[2] Plaintiff previously applied for Title II disability insurance benefits in 2016 [Tr. 254] but was found not disabled on January 11, 2018 [Tr. 251-75]—an administratively final decision not at issue in the present case [Tr. 23-24].

2

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). He can lift and/or carry 20 pounds occasionally, 10 pounds frequently. The claimant can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday. He can occasionally climb ladders, ropes, and scaffolds, and he can frequently climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. In terms of environmental limits, the claimant should avoid work outdoors in bright sunshine; could do no work with bright or flickering lights such as would be experienced in welding or cutting metals. There are no other limits.

6. The claimant is capable of performing past relevant work as *computer supervisor*, *network administrator-control operator*, *computer technician*, *user support analyst*, *computer section specialist*, and *systems security specialist*. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2018, the *amended* alleged onset date, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 26–40].

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be

considered disabled:

> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his
> impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is
> suffering from a severe impairment that has lasted or is expected to
> last for a continuous period of at least twelve months, and his
> impairment meets or equals a listed impairment, claimant is
> presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his
> past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his
> past relevant work, if other work exists in the national economy that
> accommodates his residual functional capacity ("RFC") and
> vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§

404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his

5

limitations.  §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff raises two arguments on appeal.  First, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination that he can perform a range of light work because he failed to comply with 20 C.F.R. § 404.1520c when determining the appropriate weight to afford each of the medical opinions [Doc. 20 at 11].  Specifically, Plaintiff asserts that the ALJ failed to provide "good reasons" as to why he found the medical opinions of three treating physicians, including optometrist Joseph Crump, O.D. ("Dr. Crump"), family physician Michael West, M.D. ("Dr. West"), and neurologist Stephen H. Landy, M.D. ("Dr. Landy"), to be "unpersuasive," and notes that the ALJ failed to mention Dr. Landy's February 20, 2018 opinion [*Id.*].  While not developing any argument specifically relating to the state medical consultant opinions, other than to assert generally that it is unclear what the ALJ relied upon to reach the RFC, Plaintiff also notes "[the ALJ] found physical state medical consultant's opinions unpersuasive, but then found mental health state medical consultant's opinions persuasive."  [*Id.*].

Second, Plaintiff argues that the Appeals Council committed an error as a matter of law by failing to remand the case to the ALJ for consideration of Social Security Ruling 19-4p ("SSR 19-4p") [*Id.* at 17].  Plaintiff asserts that consideration of SSR 19-4p would have required the ALJ to analyze Plaintiff's headaches under Listing 11.02 for Epilepsy.  Plaintiff argues that the Appeals

6

Council should have either analyzed the claim under Listing 11.02 for medical equivalency or remanded the claim for assessment under SSR 19-4p. Thus, Plaintiff requests for the Court to issue an order remanding his claim for further consideration.

Noting that the concepts of providing "good reasons" for determining the "weight" of an opinion are not concepts applicable to the evaluation of the opinion evidence in this case, the Commissioner maintains that the ALJ appropriately evaluated the persuasiveness of the medical opinion evidence in accordance with the relevant regulations [Doc. 23 at 9] and explained how substantial evidence supported the RFC determination [*Id.* at 20]. The Commissioner further asserts that SSR 19-4p, concerning the evaluation of cases involving primary headache disorders, does not apply to Plaintiff's claim because it became applicable after the ALJ's July 11, 2019 decision in this case, [*Id.*]. Thus, the Commissioner requests for this Court to affirm her final decision.

The Court will now address the issues raised by Plaintiff in turn.

**A.      ALJ's Evaluation of the Medical Opinion Evidence & RFC Determination**

Plaintiff argues first that the ALJ's assessment of Plaintiff's RFC was unsupported by substantial evidence because the ALJ failed to comply with 20 C.F.R. § 404.1520c when he determined what weight to afford to the medical opinions. Plaintiff asserts that the ALJ failed to provide "good reasons" for his decisions regarding what weight to afford each opinion and failed to mention Dr. Landy's February 20, 2018 opinion. The Commissioner maintains that the ALJ's evaluation of the persuasiveness of the medical opinion evidence was appropriate and performed in accordance with the relevant agency rules and regulations.

As a threshold matter, because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") new regulations for evaluation of medical opinion evidence

apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. While Plaintiff argues that the ALJ failed to provide "good reasons" for the weight he afforded the medical opinions, under the new regulations, the ALJ is no longer required to assign "weight" to the opinions or to give good reasons for the weight ascribed to a treating-source opinion. Instead, as emphasized by the Commissioner, the ALJ evaluates the persuasiveness of each medical source guided by the regulatory factors set forth in § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Moreover, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior

8

administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Guided by these provisions in its analysis, the Court now turns to the respective medical opinions.

1. *Dr. Crump's Opinion*

The ALJ considered a one-page letter written by Dr. Crump in August 2018 as well as a July 12, 2018 medical source statement from Dr. Crump, finding both unpersuasive. Plaintiff only makes a general argument as to Dr. Crump's opinion, stating that the ALJ failed to articulate how he analyzed the 20 C.F.R. § 404.1520c factors. The Court summarizes the ALJ's evaluation of Dr. Crump's opinions as follows:

9

The ALJ noted that Dr. Crump submitted a letter in 2018 in which he stated that the Plaintiff's vision is normal when he is not having cluster headaches [Tr. 37 (citing [Tr. 803])]. However, Dr. Crump stated that Plaintiff's vision was "certain[ly] affected" when he experienced his cluster headache attacks [*Id.*]. Dr. Crump further stated that Plaintiff experiences some extreme visual disturbances during those episodes, and Plaintiff reported having episodes up to three (3) times per day with each lasting 2–5 hours at a time [*Id.*]. Dr. Crump wrote that Plaintiff's symptoms included: photophobia (light sensitivity to the point of pain), double vision which contributes to loss of balance, left eye closure from pain which also contributed to loss of balance and depth perception, painful glare from photophobia, and inability to focus and sustain focus for any length of time." [Tr. 37-38 (citing [Tr. 803])]. Dr. Crump opined that Plaintiff's visual problems limited him to not being able to do much more than finding a dark, quiet area to wait until the episode passes [*Id.*].

Dr. Crump also submitted a medical source statement dated July 12, 2018 [*See* Docs. 24 (Supplemental Transcript) & 23-1 (Plaintiff Exhibit 1)]. In that statement, Dr. Crump opined that Plaintiff would have difficulties with his vision, but those difficulties manifest *only* when he is experiencing one of his headache episodes [*Id.*]. Otherwise, Plaintiff's vision was fine [*Id.*]. During a headache episode, Plaintiff would be unable to: avoid ordinary hazards in the workplace, read small print, view a computer screen, and differentiate between small objects like nuts, bolts, or screws [*Id.*].

The ALJ determined that "[t]he opinions from optometrist Joseph Crump … are unpersuasive because this optometrist clearly based his opinions almost entirely on the claimant's own subjective complaints." [Tr. 38 (internal citation omitted)]. The ALJ stated that objective testing indicated Plaintiff's vision was fine, and Plaintiff's "strange behavior and presentation at the consultative examinations raises troubling questions about the accuracy of his descriptions of subjective symptoms of pain." [Tr. 38]. Additionally, the ALJ found that Plaintiff's reported daily activities were inconsistent with Dr. Crump's opinions [*Id.*].

The SSA's rules provide: "when a medical source provides multiple medical opinion(s) … we will articulate how we considered the medical opinions … from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as

10

appropriate. We are not required to articulate how we considered each medical opinion … from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Thus, the ALJ's analysis of Dr. Crump's letter and the medical source statement may be considered as a whole, and that is how the Court has reviewed this aspect of the decision.

The Court finds that the ALJ's evaluation of Dr. Crump's opinion was appropriate in this case because he sufficiently addressed the § 404.1520c factors. As to the first factor, the Court acknowledges that the ALJ does not expressly use the term "supportability." Nevertheless, when finding Dr. Crump's opinion to be unpersuasive, the ALJ stated that it appeared his opinions were based "almost entirely on the claimant's own subjective complaints," and "[o]bjective testing shows [Plaintiff's] vision is fine." [Tr. 38]. These findings speak directly to the supportability factor, which provides: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor, consistency, the ALJ found that Plaintiff's reported daily activities were inconsistent with Dr. Crump's opinion. [Tr. 38]. Such inconsistencies are sufficient reason to disregard the opinion. *See Mueller v. Comm'r of Soc. Sec.*, 683 F. App'x 365, 366 (6th Cir. 2017) (unpublished) (finding inconsistency between physician's opinion and claimant's treatment and/or daily activities sufficient reason to discount the opinion).

The ALJ appropriately evaluated the § 404.1520c factors of consistency and supportability, and substantial evidence exists to support his determination. Additionally, the ALJ was not required to articulate how he considered the remaining § 404.1520c factors. *See* 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider

medical opinions and prior administrative medical findings in your case record."). Thus, the Court finds that the ALJ's evaluation of Dr. Crump's opinions was appropriate.

### 2. *Dr. West's Opinion*

The ALJ considered two statements submitted by Dr. West, Plaintiff's treating family physician. First, the ALJ considered a letter dated May 18, 2018, which Dr. West wrote on Plaintiff's behalf and was noted by the ALJ to appear to be related to Plaintiff's Veteran's Administration ("VA") disability claim [Tr. 36 (citing [Tr. 657–59])]. In his letter, Dr. West explained various aspects of trigeminal neuralgia and cluster headaches, which he described as "one of the most excruciating painful headaches known to medical science." [*Id.*]. Dr. West related that Plaintiff would experience more than 3–5 attacks per day and each would last around 3–5 hours at a time [*Id.* at 658]. Dr. West stated that various medical treatment options were pursued before settling on chronic pain management through Oxycodone [*Id.*]. Dr. West stated: "I cannot put into words how devastating this condition is to every aspect of his life, and I can with 100% certainty state that I feel he in no way is exaggerating the symptoms associated with his condition." [*Id.*]. However, the ALJ found Dr. West's May 2018 "opinion" to be unpersuasive [Tr. 36].

Plaintiff argues that Dr. West's opinion was supported by a variety of factors, including his treatment relationship with Plaintiff and his opinion being consistent with Dr. Landy's.[3] The Commissioner, however, asserts that Dr. West's letter does not constitute a medical opinion under the relevant regulations such that it need not have been evaluated under the § 404.1520c factors.

---

[3] As discussed *infra*, the Court concludes that Dr. Landy's opinion does not qualify as a "medical opinion" under 20 C.F.R. § 404.1513(a)(2).

20 C.F.R. § 404.1513(a)(2) defines the term "medical opinion" for claims filed on or after March 27, 2017, as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) Your ability to adapt to environmental conditions, such as temperature or extremes of fumes.

The Court agrees with the Commissioner that this letter does not appear to qualify as a "medical opinion" under the relevant rules, as it fails to indicate what Plaintiff "can still do" despite his impairments. Instead, the letter focuses on describing Plaintiff's symptoms and on Dr. West's belief concerning Plaintiff' subjective reports. *See Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-01718-CEH, 2021 WL 5603393, at *7 (N.D. Ohio Nov. 30, 2021) ("Dr. Marshall's letters provided only medical history, observations, diagnoses, and that claimant is disabled and unable to work. None of this can be considered a 'medical opinion.' There was no statement about what Claimant could or could not do or whether he had any impairment-related limitations.") (internal citations omitted); *accord Mercado v. Comm'r of Soc. Sec.*, 1:20-CV-02253-BYP, 2021 WL 5496678, at *7 (N.D. Ohio Nov. 4, 2021). Furthermore, the ALJ critiqued Dr. West's letter for these very same

reasons. Thus, it appears that the § 404.1520c factors need not have been discussed in this specific instance.

Regardless, the ALJ described the letter from Dr. West as an "opinion" in his decision, and the Commissioner argues that—were the letter found to be a "medical opinion"—the ALJ's analysis was still appropriate. Specifically, the Commissioner notes that the ALJ found that Dr. West's letter relied too heavily on Plaintiff's subjective complaints in light of the overall record [*see* Tr. 36], which is an appropriate basis for discrediting an opinion. *See Johnson v. Astrue*, No. 1:09 CV 2959, 2010 WL 5559542, at *9 (N.D. Ohio Dec. 3, 2010), *report and recommendation adopted*, 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010) (noting that discrediting an opinion heavily influenced by subjective complaints is not contrary to Social Security regulations or Sixth Circuit case law); *Young v. Sec'y of Health & Hum. Servs.,* 925 F.2d 146, 151 (6th Cir.1990) (finding an ALJ's rejection of opinion proper because the opinion was based on claimant's subjective complaint). Moreover, while Dr. West opined that "I can with 100% certainty state that I feel [Plaintiff] in no way is exaggerating the symptoms associated with his condition," the evaluation of subjective complaints rests with the ALJ. *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 652 (6th Cir. 2009) (citing *Siterlet v. Sec'y of Health & Hum. Servs.,* 823 F.2d 918, 920 (6th Cir. 1987)).

Additionally, this "opinion" appeared to have been written for the VA, as it discusses percentages of disability due to Plaintiff's medically determinable impairments. The ALJ noted that "[t]he VA rating system has nothing at all to do with whether a person is disabled under SSA regulations." [*Id.*]. Given this discussion of Dr. West's "opinion" letter, the Court finds that the ALJ's evaluation was appropriate in this instance. Furthermore, the ALJ discussed consistency and supportability in more detail when evaluating the medical source statement that Dr. West also submitted. Thus, were the letter to be considered a "medical opinion," it may be considered in

14

combination with the medical source statement for purposes of the ALJ's evaluation of Dr. West's opinion as a whole. *See* 20 C.F.R. § 404.1520c(b)(1).

In his April 2019 medical source statement, Dr. West opined that Plaintiff could occasionally lift and carry up to 20 pounds; occasionally operate foot controls, operate a motor vehicle, and climb ramps and stairs; never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl; and never have exposure to unprotected heights, moving mechanical parts, humidity, wetness, temperature extremes, pulmonary irritants, or vibrations; and tolerate no more than quiet noise. As support for these particular limitations, Dr. West noted pain due to trigeminal neuralgia and right hip pain. Dr. West further opined that Plaintiff could sit for up to two hours at a time and stand and walk for up to one hour each, citing pain due to trigeminal neuralgia and hyperactivity due to ADHD (attention deficit hyperactivity disorder) as support for the assessment. Finally, Dr. West opined that Plaintiff could occasionally perform manipulative activities with bilateral upper extremities, identifying pain due to trigeminal neuralgia as support for the limitation. In those instances where Dr. West noted more than one factor in support of a limitation, e.g., trigeminal neuralgia and hip pain, he did not identify the extent to which the limitation was caused by each factor [Tr. 38 (citing [Tr. 918–23])].

The ALJ found this April 2019 opinion form to be "mostly unpersuasive because it does not find strong support in the medical evidence, and it is not consistent with the record as a whole." [*Id.*]. Specifically, the ALJ relates that "this opinion states the claimant could never balance, crouch, or stoop. These limitations do not have support in the medical evidence of record." [*Id.*]. The ALJ found Dr. West's opinion "partially persuasive insofar as it suggests the claimant could perform light work because this conclusion is consistent with the medical evidence and the longitudinal record." [*Id.*].

The Court finds that the ALJ addressed the required § 404.1520c factors of supportability and consistency, as evidenced in his decision, and that the overall evaluation is supported by substantial evidence in the record. The ALJ referenced evidence in the record that detracts from the factors noted by Dr. West as supporting Plaintiff's limitations outlined in the medical source statement. Among other things, the ALJ referenced a February 2018 treatment note where Dr. West recorded that Plaintiff's trigeminal neuralgia symptoms were well controlled with medication and that there was good compliance and tolerance of treatment [*Id.* at 29 (citing [Tr. 501])]. The ALJ also referenced a May 2018 treatment note when Plaintiff reported that he "had no generalized weakness" and "[h]e reported headaches, but he denied dizziness, cognitive changes, fainting, limb weakness, difficulty walking, or tremor." [*Id.* at 33 (citing [Tr. 664])]. While the ALJ's review of the inconsistencies does not occur simultaneously with his evaluation of Dr. West's opinion, the Court finds it to be relevant and supports the ALJ's findings. *See Rice v. Saul*, No. 1:19-cv-2665, 2021 WL 4236483, at *5 (N.D. Ohio Sept. 17, 2021) (recognizing that, if the ALJ narrates the conflicting medical evidence in the record, then the ALJ need not restate it when explaining how an opinion is inconsistent with the evidence) (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). In addition, the Commissioner notes that "during treatment with Dr. West during the relevant period, Plaintiff sometimes reported joint pain, but repeatedly reported no muscle weakness, no dizziness, no difficulty walking, no numbness, and no tremor." [Doc. 23 at 14 (citing [Tr. 501, 664, 806, 816, 822, 826–27, 831–32, 842–43])]. It is well established that an administrative law judge can "consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006).

16

Thus, the Court finds that the ALJ properly evaluated Dr. West's opinion in accordance with the relevant rules and regulations, and his finding it unpersuasive in certain respects while partially persuasive in others is supported by substantial evidence.

### 3. *Dr. Landy's Opinion*

In a report dated August 10, 2015, Dr. Landy stated that Plaintiff was "very disabled" due to chronic pain [Tr. 654].[4] The ALJ found this opinion to be "unpersuasive because it is vague and it does not cite to relevant medical evidence. Moreover, this opinion is inconsistent with the subsequent medical evidence as well as the record as a whole. Additionally, this provider relied too heavily on the claimant's own subjective reports of pain." [Tr. 37].

Plaintiff does not specifically argue against the ALJ's assessment of Dr. Landy's 2015 report, but rather takes issue with the ALJ's failure to mention a later statement by Dr. Landy in a February 20, 2018 treatment note, to the effect that Plaintiff was "very disabled" due to his headaches [Tr. 645]. The Commissioner asserts that the ALJ did not err in evaluating Dr. Landy's statements because neither statement is a medical opinion under the regulations, meaning they need not have been analyzed per the § 404.1520c factors. Specifically, the Commissioner states that neither statement describes what Plaintiff "can still do" despite his limitations. *See* 20 C.F.R. § 404.1513(a)(1) (defining "medical opinion"). Instead, they contain Dr. Landy's clinical findings, which do not constitute a medical opinion under the regulations. *See* 20 C.F.R. § 404.1513(a)(3) (defining "other medical evidence" as "evidence from a medical source that is not objective medical evidence or a medical opinion, including … clinical findings").

---

[4] The Court notes that Dr. Landy uses several descriptive terms in his reports, including "very disabled," "totally disabling condition," and "severely disabling." [*See* Tr. 645 & 654].

17

The Court agrees with the Commissioner's classification of Dr. Landy's reports as "other medical evidence" such that it would not be subject to the factors under § 404.1520c. The Court further agrees with the Commissioner that to the extent Dr. Landy's statement may concern what Plaintiff can still do, such that he is "very disabled" and had a "totally disabling condition," such statements speak to an issue reserved to the Commissioner, and the ALJ is not required to address them. *See* 20 C.F.R. § 404.1520b(c)(3).

### 4. *State Agency Consultants' Opinions*

As previously noted, Plaintiff does not develop any argument specifically relating to the state medical consultant opinions other than to assert generally that it is unclear what the ALJ relied upon to reach the RFC. With respect to the state agency physical consultants, the ALJ stated [Tr. 35] that in July 2018, Dr. Thrush opined that Plaintiff could lift and carry 100 pounds occasionally and 50 pounds frequently, that he could stand and/or walk for six (6) hours in an 8-hour workday as well as sit for more than six (6) hours in an 8-hour workday, and that he has no additional postural, environmental, visual, communicative, or manipulative limitations [*See* Tr. 286]. The ALJ noted that Dr. Parrish opined to the same limitations as Dr. Thrush in September 2018 [*See* Tr. 301–02]. The ALJ determined that the opinions of Drs. Thrush and Parrish were unpersuasive, "because the subsequently received medical evidence at the hearing level shows lumbar spinal stenosis with radiculopathy. This medical evidence supports the light residual functional capacity. The residual functional capacity limits the claimant to light exertion." [Tr. 35].

In determining a more restrictive RFC for Plaintiff than what was opined by Drs. Thrush and Parrish, the ALJ considered that these opinions were formed before additional medical evidence was received at the hearing level that showed greater limitations for Plaintiff. Thus, the

18

subsequently received objective medical evidence hindered the supportability of these opinions, and they were not consistent with the other evidence of record, as the ALJ concluded that the record supported a finding that Plaintiff would be limited to work at a light exertional level. Thus, the ALJ's evaluation of these consultative medical opinions was proper under the circumstances.

With respect to the state agency mental health consultants' opinions, the ALJ found them persuasive because they were supported in the medical evidence and consistent with the record as a whole. The ALJ specifically noted that the medical evidence revealed "mostly normal mental health signs and findings," that Plaintiff performed a wide range of daily living activities, and his symptoms were under good control with prescription medication [*Id.*]. Accordingly, the Court finds that the ALJ made it sufficiently clear why he rejected the state agency physical consultants' opinions while finding the mental health consultants' opinions persuasive, which supported the ultimate RFC determination. The ALJ's assessment of the state agency opinions as well as the ALJ's treatment of the other opinions contained in the record was appropriate, and substantial evidence exists to support the ALJ's determination.

As noted by the Commissioner, it appears Plaintiff suggests that the ALJ's RFC finding must be based on a specific medical *opinion* supporting the same conclusion. However, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the ALJ determined the RFC based upon objective medical and non-medical evidence. *See e.g., Reinartz v. Comm'r of Soc. Sec.,* 795 F. App'x 448, 449 (6th Cir. 2020) (unpublished) (rejecting claimant's contention that an ALJ may not make a work-capacity finding without a medical opinion reaching the same conclusion); *Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009).

Here, the ALJ's assessment of the medical opinions was sufficient, explaining why the opinions were found to be poorly supported or inconsistent with the record. Moreover, the ALJ sufficiently explained how the record evidence supported the assessed RFC, including consideration of medical opinions, treatments notes, objective testing and examination results, the effectiveness of treatment and medication, Plaintiff's testimony, and Plaintiff's reported activities. Plaintiff's arguments generally boil down to an allegation that the ALJ ignored certain facts from the record that would otherwise support a finding of disability—an allegation that the ALJ cherry-picked select portions of the record rather than doing a proper analysis. "However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant." *Shelby v. Comm'r of Soc. Sec.,* No. 3:20-CV-00344-CHL, 2021 WL 4492858, at *5 (W.D. Ky. Sept. 30, 2021). The Court does not find that the ALJ departed from the substantial evidence standard by cherry-picking the record, but rather finds the ALJ properly addressed the record as a whole. While Plaintiff cites medical evidence that he maintains supports a disability finding, Plaintiff's arguments present an alternative view of the evidence, which does not overcome substantial evidence supporting the ALJ's findings. *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")). "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate

evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

### B.    Applicability of SSR 19-4P to Plaintiff's Claim

Plaintiff argues that the Appeals Council's failure to remand the case to the ALJ for consideration of SSR 19-4p constituted error as a matter of law. Furthermore, Plaintiff asserts that SSR 19-4p "directs that once a primary headache medically determinable impairment has been found, the adjudicator should analyze whether the impairment is medically equal to listing 11.02." [Doc. 20 at 17 (citing SSR 19-4p)]. Plaintiff states that the ALJ did not analyze Plaintiff's cluster headaches under Listing 11.02, and thus the Appeals Council should have either analyzed the claim under Listing 11.02 for medical equivalency or remanded the claim for assessment under SSR 19-4p. The Commissioner argues that SSR 19-4p does not apply to this case.

The SSA issued SSR 19-4p on August 26, 2019, with its purpose being to provide "guidance on how we establish that a person has a medically determinable impairment (MDI) of a primary headache disorder and how we evaluate primary headache disorders in disability claims under titles II and XVI of the Social Security Act (Act)." *See* SSR 19-4p. SSR 19-4p became "applicable on August 26, 2019." *Id.* The SSA clarified SSR 19-4p's applicability by providing:

> We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.

21

*Id.* at n.27.

Plaintiff argues that "although the ALJ's decision was dated July 11, 2019 [*see* [Tr. 20]], prior to SSR 19-4p, the Appeals Council adjudicated the case after the applicable August 26, 2019 date, and thus, was obligated to apply SSR 19-4p." [Doc. 20 at 16]. Plaintiff also states that "[t]he decision of the Social Security Administration becomes final judgement [*sic*] at the point that the Appeals Council denies the claimant's request for review of the ALJ's decision. [*Id.* at 16–17 (citing *Wilson*, 378 F.3d at 543)]. It appears that Plaintiff has misconstrued the SSA's final decision.

The Appeals Council's denial of Plaintiff's request for review of the ALJ's decision was not the "final decision" of the SSA as to Plaintiff's claims; instead, the Appeals Council's denial of review effectively made the *ALJ*'s decision the "final decision" of the Commissioner. The SSA's rules provide that "[i]f you or any other party is dissatisfied with the hearing decision or with the dismissal of a hearing request, you may request that the Appeals Council review that action. The Appeals Council may deny or dismiss the request for review, or it may grant the request and either *issue a decision* or remand the case to an administrative law judge." 20 C.F.R. § 404.967 (emphasis added). Additionally, "[t]he Appeals Council may deny a party's request for review or it may decide to review a case and *make a decision*. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised." 20 C.F.R. § 404.981.

The above sections support the notion that the Appeals Council's denial of review did not constitute its own determination or decision, but rather that its denial rendered the ALJ's July 11, 2019 decision as the final decision of the Commissioner. Thus, because the agency issued no

22

determination or decision on or after August 26, 2019, SSR 19-4p does not apply in this case. *See Jennifer M. A. v. Saul*, No. 20-2159-JWL, 2021 WL 1056423, at *8 (D. Kan. Mar. 18, 2021) ("[SSR 19-4p] specified that it will only be used in determinations or decisions by the SSA, and the Appeals Council denied review of the ALJ's decision leaving that decision as the final decision of the Commissioner. The Commissioner's final decision was complete and not pending after SSR 19-4p was promulgated and the Appeals Council [in denying review] did not make a decision or determination."). Based on the Court's finding that SSR 19-4p is inapplicable to Plaintiff's case, it is unnecessary to review SSR 19-4p or Listing 11.02 in greater detail. As such, a remand of the Commissioner's final decision is not warranted on this basis.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**, Plaintiff's Motion for Extension of Time [**Doc. 18**] will be **DENIED as MOOT**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.


Debra C. Poplin
United States Magistrate Judge